# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| In the Matter of the Seizure of<br><br>**$57,880.00 U.S. CURRENCY** | )<br>)<br>)     Case No. 23-mc-771<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR RELIABLE ELECTRONIC MEANS

I, Derek Docken, being duly sworn, do depose and state under penalty of perjury:

I am a Task Force Officer with the Drug Enforcement Administration and have reason to believe that certain property, namely:

**$57,880.00 U.S. CURRENCY**

is property that constitutes or is derived from proceeds traceable to property involved in violations of Title 21, United States Code, Sections 841(a)(1) and 846. The property described above is therefore subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) and is forfeitable pursuant to 21 U.S.C. §§ 853(a)(1) and 881(a)(6).

The facts to support a finding of probable cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT, incorporated herein.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 1:15 p.m.

Date: September 7, 2023.

Medford, Oregon

Derek Docken, Task Force Officer, DEA
*Printed name and title*

_____
*Judge's signature*

MARK D. CLARKE, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:    AFFIDAVIT OF DEREK DOCKEN

### Affidavit in Support of an Application for Seizure Warrant

I, Derek Docken, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.    I am a Task Force Officer (hereinafter "TFO") with the Drug Enforcement Administration (hereinafter "DEA") and have been since November 2021. My current assignment is at the Medford Oregon Resident Office. I am also a Detective with the Central Point Police Department, and I have been employed for more than five (5) years. Part of my training and experience has included the basic police academy, five (5) years of patrol, and more than one (1) year as a Field Training Officer (FTO). I have more than 1,200 hours of official law enforcement related training recorded with the Oregon Department of Public Safety Standards and Training. During my employment with the Central Point Police Department, I have investigated or assisted with the investigation of cases including the possession, distribution, and manufacture of controlled substances. While working these types of cases, I have consulted and conversed with numerous law enforcement officers from various local, state, and federal agencies on drug cases of many types, including the distribution of methamphetamine, heroin, fentanyl, cocaine, and marijuana. As a result of this and my own experience and training, I am familiar with these controlled substances and the methods employed by traffickers of these narcotics.

This affidavit is being submitted in support of an Application for Seizure Warrant for the below listed property:

$57,880 in U.S. Currency, located at the Central Point Police Department.

**Page 1 - Affidavit of Derek Docken**

2. Based on information contained in this affidavit, there is probable cause to believe, and I do believe, the above asset is currency derived from proceeds obtained directly or indirectly as a result of violations of Title 21, United States Code, Sections 841(a)(1) and 846. The currency is therefore subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f), and subject to forfeiture pursuant to 21 U.S.C. §§ 853(a)(1) and 881(a)(6). Accordingly, this application seeks a seizure warrant for the currency.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## APPLICABLE LAW

4. Title 21, United States Code, Sections 841(a)(1) and 846 provides that no person shall distribute a controlled substance or conspire to do the same.

## STATEMENT OF PROBABLE CAUSE

### Summary of the Investigation

5. On October 20, 2020, Central Point Police Department (CPPD) received a report of a rape of a 13-year-old juvenile girl. Onesaeng SAYAVONG was the suspect in the rape investigation.

6. Central Point Police Detective Vargas' determined that SAYAVONG lived at 106 Windsor Way Central Point, Oregon (Hereinafter referred to as the "Residence"). On

**Page 2 – Affidavit of Derek Docken**

November 6, 2020, Det. Vargas interviewed a juvenile male named Christian Frombach. Det. Vargas had information that Frombach was at the residence when the rape occurred. When Det. Vargas asked Frombach how he knew SAYAVONG, Frombach explained that he was hired by SAYAVONG to water approximately 15 marijuana plants in the backyard of SAYAVONG's Residence for $5.00 per plant. Frombach said they had met at a grocery store. Frombach advised that SAYAVONG referred to the plants he was to water as marijuana plants.

7.  On November 19, 2020, police conducted a traffic stop on the vehicle SAYAVONG was driving. SAYAVONG was taken into custody on warrants pertaining to the rape investigation. In the vehicle, SAYAVONG had two large bags of what police described as a green leafy substance that the officer believed was consistent with marijuana. SAYAVONG admitted the two bags contained approximately two pounds of marijuana.

8.  SAYAVONG was transported to the CPPD for further interviewing by Det. Vargas. SAYAVONG advised he made "just about" a 6 figure a year salary working in the hemp industry for a company he identified as "ONAC". SAYAVONG also advised he had other jobs in the hemp/marijuana industry.

9.  On November 19, 2020, CPPD executed a state search warrant on SAYAVONG's residence at 106 Windsor Way, Central Point, Oregon for evidence pertaining to the rape case. During the search of the residence investigators seized $57,880 in U.S. Currency, a plastic bag containing a white powder substance which tested positive for cocaine, two balls of a black tar like substance wrapped in plastic which tested positive for heroin, a black digital scale with residue, and a Sig Sauer 40 caliber handgun. The U.S. currency was found in the closet within a small brown suitcase, and all the other seized items were found in SAYAVONG's bedroom. Investigators also located a large amount of what appeared to be drying marijuana hanging as

**Page 3 – Affidavit of Derek Docken**

well in bags.

10.  Det. Vargas asked SAYAVONG if he had any of the seized items in his home and SAYAVONG advised "not that I am aware of". Det. Vargas' advised SAYAVONG that they had found the seized items in SAYAVONG's residence, and SAYAVONG said he was not sure who could have put those items in his home. SAYAVONG claimed he had about $60,000 in his home, which he claimed was his earnings from work in 2020. SAYAVONG denied any criminal activity at his residence.

11.  On December 2, 2020, Det. Vargas investigated SAYAVONG's claims of employment. Because SAYAVONG told Det. Vargas that he had worked for a male named Cliff Chang, Vargas interviewed Chang. Mr. Chang said he had hired SAYAVONG as a "handy man", but SAYAVONG never showed up to work, and Chang never paid SAYAVONG any money.

12.  Det. Vargas followed up on the company "ONAC" which SAYAVONG claimed he was making "just about" a 6 figure a year salary. Det. Vargas was only able to locate "ONAC 7th Generation" which identified itself as a "cannabis clinic" dispensary with an associated address in Costa Mesa, California. Det. Vargas determined that this address was not associated with an actual location. Det. Vargas researched the ONAC company and found the following statement: "Welcome to Oklevueha FAKE Native American Church (ONAC) of 7 Generation. A Non recognized religion that practices lies and deception to get your money. We stand to profit greatly from scamming you out of your hard-earned cash. Our 1 review is obviously fake and was made by our manager. Oklevueha Fake Native American Church of 7 Generation wants your money." Det. Vargas was unable to determine whether ONAC was a legitimate business.

13.  Det. Vargas interviewed SAYAVONG'S landlord, Arthur Durone. Mr. Durone

**Page 4 – Affidavit of Derek Docken**

advised he was unsure of SAYAVONG's employment and stated that SAYAVONG mostly paid his $1,750 monthly lease in cash. Mr. Durone advised he believed SAYAVONG worked for a nonprofit organization in Southern California that was associated with a Native American Tribe. Mr. Durone also said that SAYAVONG claimed he wanted to get into the hemp and marijuana cloning industry and was looking for property in the Rogue Valley. Mr. Durone further advised that he had gone with SAYAVONG to Las Vegas on one occasion where he witnessed SAYAVONG spend $5,000 on a pair of shoes, and approximately $30,000 in a Gucci Store on belts and clothes.

14. Det. Vargas interviewed SAYAVONG's sister, Bael Sayavong, regarding SAYAVONG, and she advised she believed he did landscape work and other side jobs. Bael further advised their family did not have much money and there was no inheritance from family or from their mother's recent passing.

15. On December 10, 2020, Det. Vargas reviewed jail phone calls made by SAYAVONG from the time of SAYAVONG's lodging in the Jackson County Jail on November 19, 2020, until Det. Vargas' review on December 10, 2020, and found SAYAVONG requested a female to collect his "indoor" and send some out of the state (Atlanta). SAYAVONG claimed that "Atlanta" has $72,000 of his money. SAYAVONG claimed that his landlord, "Art," owed him $18,000 and that a male named Dave owed him $26,400. SAYAVONG also had conversations regarding "boxes" and shipments which are consistent with import/export marijuana as well as conversations about money transfers to accounts. SAYAVONG discussed not depositing more than $10,000 at a time to avoid "red flags". Additionally, investigators located a phone conversation SAYAVONG had with a female associate in which SAYAVONG informed the female that SAYAVONG told investigators he worked for "Cliff." SAYAVONG

Page 5 – Affidavit of Derek Docken

further instructed the female to notify "Cliff" of this claim and that "Cliff" would back him 100%. SAYAVONG appeared to be unaware investigators had already spoken with Cliff CHANG.

16. In my training and experience I know the term "indoor" to commonly refer to indoor grown marijuana. I also know from my training and experience that marijuana is often times shipped out of the state of Oregon to other states where marijuana is illegal for the shipper to make a profit. The above listed conversations appear to indicate the shipment of marijuana out of the state of Oregon with the reference of "Atlanta" indicating possible shipments to Georgia where recreational marijuana is not legal.

17. On September 5, 2023, I received further information regarding import/export marijuana and SAYAVONG. In August of 2020, the Drug Enforcement Administration (DEA) and the Siskiyou County Sheriff's Office (hereinafter referred to collectively as "Investigators") were investigating a drug trafficking organization (DTO) involving Bryce COLEMAN, Caitlyn LECOMPTE, Hsui "Cliff" CHANG, and others who work to broker marijuana shipments to various states across the country.

18. On August 19, 2020, Investigators executed California State Search warrants at a residence in McCloud California (hereinafter referred to as "residence 1") where Bryce Coleman resided. During the course of this investigation, Investigators confirmed this property as well as another property in Weed, California (hereinafter referred to as "residence 2") were owned by Hsui "Cliff" CHANG and rented to COLEMAN. During the execution of the search warrants, over 1800 marijuana plants, over 260lbs of processed marijuana and hundreds of packages of marijuana candies were seized. Multiple items belonging to Caitlyn LECOMPTE were located during the execution of the search warrant at residence 1, including a blue rolling

Page 6 – Affidavit of Derek Docken

suitcase containing clothing items that were in LECOMPTE'S possession when previously contacted by Investigators at the Rogue Valley International Airport on July 29, 2020.

19. On July 29, 2020, Investigators contacted LECOMPTE at the Rogue Valley International Airport in relation to information relating to possible money laundering and import/export of marijuana. During that investigation, Investigators seized $131,735 in U.S. Currency from LECOMPTE. The majority of the cash was located inside LECOMPTE'S blue rolling suitcase, rolled within clothing inside the suitcase. This same suitcase and clothing were later located during the search warrant at residence 1 on August 19, 2020.

20. On August 19, 2020, CHANG arrived at residence 1 during the execution of the search warrant. CHANG verbally confirmed he is the owner of residence 1 and residence 2.

21. Based on Det. Vargas' reports and my training and experience the $57,880 is believed to be profits from the illicit sales of marijuana, cocaine, and/or heroin with the believed shipments of marijuana out of the state of Oregon. Investigators also believe based on the jail phone calls and the interview of Cliff Chang, that the relationship between SAYAVONG and Chang to be more than purported and likely linked to the import/export of marijuana.

22. In my training and experience the cash transactions to his landlord are consistent with drug sales as a primary means of income, the lavish purchases referenced by SAYAVONG's landlord are consistent with illicit income, and the lack of verifiable employment with large quantities of US Currency is consistent with drug dealing for primary income. In my training and experience, these details combined with the jail phone calls referencing import/export marijuana lead investigators to believe the seized $57,880 is profits from the illegal sales of narcotics.

Page 7 – Affidavit of Derek Docken

## CONCLUSION

23. Based on foregoing, I have probable cause to believe, and I do believe, that the above listed asset is currency derived from proceeds obtained directly or indirectly as a result of violations of Title 21, United States Code, Sections 841(a)(1) and 846 provides that no person shall distribute a controlled substance or conspire to do the same.

24. Prior to being submitted to the Court, this affidavit for seizure warrant was reviewed by Assistant United States Attorney (AUSA) Judi Harper, and AUSA Harper advised me that in her opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.



S/Derek O. Docken

Derek O Docken
Task Force Officer, DEA

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 1:15 a.m./p.m. on 9/7/23.

Mark D. Clarke
United States Magistrate Judge

Page 8 – Affidavit of Derek Docken